**In re Lance R. GIFFORD and Mary B. Gifford, Debtors.**

**No. 99–23346.**

United States Bankruptcy Court, D. Connecticut.

Dec. 5, 2000.

George M. Purtill, Purtill, Purtill & Pfeffer, P.C., South Glastonbury, CT, for debtors.

Thomas J. Farrell, Hunt, Leibert, Chester & Jacobson, P.C., Hartford, CT, for Homeside Lending, Inc.—Creditor.

*PARTIAL RULING ON DEBTOR'S MOTION FOR ATTORNEY'S FEES*

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

**I.**

ISSUE

Lance R. Gifford and Mary B. Gifford ("the debtors"), on September 12, 2000, filed a motion, based upon Conn.Gen.Stat. § 42–150bb [1], for attorney's fees incurred

---

1. Section 42–150bb, *Attorney's fees in action based on consumer contract or lease,* provides:

Whenever any contract or lease entered into on or after October 1, 1979, to which a consumer is a party, provides for the attorney's fee of the commercial party to be paid by the consumer, an attorney's fee shall be awarded as a matter of law to the consumer who successfully prosecutes or defends an action or a counterclaim based upon the contract or lease. Except as hereinafter provided, the size of the attorney's fee

by them as a result of their partially successful objection to the proof of claim filed by Homeside Lending, Inc. ("Homeside") in the debtors' joint bankruptcy case. The question presently before the court is whether, as Homeside contends, the Bankruptcy Code preempts Conn.Gen.Stat. § 42–150bb so that attorney's fees are neither recoverable under that statute nor otherwise.

## II.

## BACKGROUND

■ Homeside is the holder of a note the debtors executed on December 10, 1993 in the original amount of $94,750.00 secured by a mortgage on the debtors' residence located at 1576 North Street, Suffield, Connecticut ("the property"). Following the debtors' default of the note, Homeside commenced a mortgage foreclosure action against the property in the Hartford Superior Court on June 12, 1997. That court dismissed the foreclosure action on June 18, 1999 for Homeside's failure to prosecute. The debtors, on October 15, 1999, filed a joint petition under Chapter 13 of the Bankruptcy Code. Homeside filed a proof of secured claim on November 23, 1999, which it subsequently amended four times—on January 3, 2000, February 15, 2000, April 18, 2000 and July 24, 2000. The debtors did not dispute Homeside's claim that the outstanding principal balance of the mortgage note as of the bankruptcy petition date was $91,359.62, but

the debtors, on January 10, 2000, filed an objection to various other charges included in Homeside's proof of claim. Homeside's amended proofs of claim had deleted a charge of $4,867.24 for "escrow shortage." The court, on June 14, 2000, held a hearing on the debtors' remaining objections and, on July 25, 2000, entered an order as follows:

1) sustaining the debtors' objection, in part, and disallowing the following items:

a) Accrued Late Charges in the claimed amount of $924.58;

b) Property Inspection Fees in the claimed amount of $309.50; and

c) Foreclosure Fees and Costs in the claimed amount of $500.00; and

2) overruling the debtors' objection, in part, and allowing the following items:

a) Bankruptcy Fees and Costs in the amount of $550.00 [2]; and

b) Appraisal Fee in the amount of $140.00.

## III.

## CONTENTIONS

Homeside contends that Conn.Gen.Stat. 42–150bb, upon which the debtors solely rely for the imposition of attorney's fees, is preempted by the Bankruptcy Code and no other basis exists for assessing such fees. Homeside argues that "the Debtor is seeking to invoke a state consumer protection statute as a remedy, or sanction,

awarded to the consumer shall be based as far as practicable upon the terms governing the size of the fee for the commercial party. No attorney's fee shall be awarded to a commercial party who is represented by its salaried employee. In any action in which the consumer is entitled to an attorney's fee under this section and in which the commercial party is represented by its salaried employee, the attorney's fee awarded to the consumer shall be in a reasonable amount regardless of the size of the fee provided in the contract or lease for either party. For the purposes of this section, "commercial party" means the seller, creditor, lessor or assignee of any of them, and "consumer" means the buyer, debtor, lessee or personal

representative of any of them. The provisions of this section shall apply only to contracts or leases in which the money, property or service which is the subject of the transaction is primarily for personal, family or household purposes.
Conn.Gen.Stat. § 42–150bb (1992).

**2.** The court now agrees with the reasoning of *Tate v. NationsBanc Mortgage Corp. (In re Tate)*, 253 B.R. 653, 660 (Bankr.W.D.N.C. 2000), and henceforth will disallow oversecured creditors' attorney's fees for bankruptcy court services included in a proof of claim. Such fees require an application pursuant to Fed.R.Bankr.P. 2016.

for the filing of a secured claim that was partially disallowed" (Homeside Mem. at 4.); that attorney's fees may be imposed only in those instances where they are authorized under the Bankruptcy Code; and that the Bankruptcy Code contains no such provisions concerning disputes over proofs of claim. The debtors contend that in the present matter the issue of attorney's fees is a matter of contract interpretation and that, therefore, state contract law governs.

## IV.

## DISCUSSION

In support of its argument for preemption, Homeside relies on the Second Circuit Court of Appeals' recent ruling in *BankBoston v. Sokolowski (In re Sokolowski)*, 205 F.3d 532 (2d Cir.2000). Such reliance is misplaced.

■ In *Sokolowski*, the court held that the applicability of Conn.Gen.Stat. § 42–150bb to bankruptcy court proceedings depends on whether the underlying dispute involves a question of state contract law or turns solely on a question of federal bankruptcy law. "If the court is determining a state law issue, the court will look to state law to determine if it is appropriate to award attorney's fees. If the proceeding involves solely an issue of bankruptcy law, bankruptcy law, rather than state law will determine the propriety of awarding attorney's fees." *Sokolowski*, 205 F.3d at 535 (citing Norton Bankruptcy Law and Practice 2d § 142:7 (1997)). "In proceedings in the bankruptcy court where state law rather than bankruptcy law provides the rule, fees may be awarded if state law allows it." *Id.* (citing 3 Daniel R. Cowans, Bankruptcy Law and Practice § 17.4(c) (6th ed.1994)).

*Sokolowski*, which "concerned the enforceability of a default-upon-filing provision in a loan contract, ... turned solely on issues of federal bankruptcy law ...

§ 521(2) [3] and the 'fresh start policy behind the Bankruptcy Code.'" *Id.* The Second Circuit concluded that Conn.Gen. Stat. § 42–150bb was inapplicable in such instances. The other rulings Homeside cites in support of its argument for preemption similarly involve substantive issues of federal bankruptcy law, rather than state contract law. *See Walls v. Wells Fargo Bank, N.A.*, 255 B.R. 38 (E.D.Cal.2000) (debtor could not recover attorney's fees under state statute for creditor's violation of automatic stay and bankruptcy discharge injunction); *Bessette v. Avco Fin. Svcs., Inc.*, 230 F.3d 439 (1st Cir.2000) (Bankruptcy Code preempts state law unjust enrichment cause of action to recover damages for reaffirmation agreements obtained in violation of § 524); *Holloway v. Household Automotive Fin. Corp.*, 227 B.R. 501 (N.D.Ill.1998) (Bankruptcy Code preempts state law fraud remedy, making the latter unavailable to debtors for creditors' filing of fraudulent proofs of claim); *Lenior v. GE Capital Corp. (In re Lenior)*, 231 B.R. 662 (Bankr. N.D.Ill.1999) (same); *Johnson v. Righetti (In re Johnson)*, 756 F.2d 738 (9th Cir. 1985), *cert. denied*, 474 U.S. 828, 106 S.Ct. 88, 88 L.Ed.2d 72 (1985) (state law attorney's fee statute held inapplicable to creditor's unsuccessful motion for relief from the automatic stay; but court noted that "when a federal bankruptcy court exercises jurisdiction over a dispute involving state law (breach of contract action), state law with respect to attorney's fees applies.").

■ The present matter, arising from the debtors' objections to Homeside's proof of claim, concerned the types and amounts of various charges to which Homeside claimed to be entitled under the terms of the mortgage contract. The court looked only to the provisions of the mortgage contract and applied them in accordance with applicable state law. The

---

**3.** The Second Circuit reaffirmed its prior holding that "11 U.S.C. § 521(2) permits a debtor who is current on loan obligations to

retain the collateral and keep making payments under the original loan agreement." *Sokolowski*, 205 F.3d at 534.

determination of any of the various amounts allowed or disallowed by the court implicated no provision of the Bankruptcy Code. The purpose of Conn.Gen. Stat. § 42–150bb is to make reciprocal the attorney's fee provisions of the mortgage. *Rizzo Pool Co. v. Del Grosso*, 240 Conn. 58, 75, 689 A.2d 1097 (1997) (citing statement in legislative history that this law "makes attorney's fee clauses reciprocal."). The Supreme Court has long held that, in the absence of a conflict with the Bankruptcy Code, state law will govern the interpretation and application of the terms of a mortgage contract. *Butner v. United States*, 440 U.S. 48, 56, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). The Supreme Court specifically rejected the argument that state law was preempted by the Bankruptcy Code merely because it was being applied in the context of a bankruptcy proceeding. *Id.* at 54 n. 9, 99 S.Ct. 914 ("[I]t has been settled from an early date that state laws to the extent that they conflict with the laws of Congress, enacted under its constitutional authority, on the subject of bankruptcies are suspended. While this is true, state laws are thus suspended only to the extent of actual conflict with the system provided by the Bankruptcy [Code].").

Homeside argues that Conn.Gen.Stat. § 42–150bb should be preempted because, "[a]lthough the Debtors cited the terms of the mortgage ... [and] state law regarding pre-acceleration late charges," Homeside instead "relied on the Debtors' obligation to cure and reinstate under Section 1322(b)(5)" of the Bankruptcy Code. (Homeside Mem. at 5.) This argument, although claiming reliance on § 1322, ignores § 1322(e) which provides "Notwithstanding subsection (b)(2) of this section ... if it is proposed in a plan to cure a default, the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law." 11 U.S.C.

§ 1322(e). In any event, it is the proper amount of Homestead's secured claim that is at issue here, not the debtors' right to cure a default.

## V.

## CONCLUSION

The court concludes that, under the facts here presented, Conn.Gen.Stat. § 42–150bb is not preempted by the Bankruptcy Code because the court has determined a state law issue. Accordingly, at the request of either party, the court will schedule a hearing to determine the reasonable attorney's fees to which the debtors may be entitled thereunder if the parties are unable to come to an agreement.[4] It is

SO ORDERED.

---

4. The parties advised the court at the hearing that if the court upheld the debtors' contentions, the parties most likely would agree on the amount of the attorney's fee payable.